IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CONNIE KELLEY and DONALD KELLEY** | : | **CIVIL ACTION** |
| Plaintiffs, | : | |
| | : | NO.  11-5537 |
| v. | : | |
| | : | |
| **UNITED STATES OF AMERICA** | : | |
| Defendant. | : | |

**DuBOIS, J.**                                                                                                         April 20, 2012

**M E M O R A N D U M**

**I.     INTRODUCTION**

Plaintiffs bring this action pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq., alleging that defendant's negligent inspection, maintenance, and warnings with respect to a slippery "deck surface/walkway" at Valley Forge National Historical Park ("the Park") caused injury to plaintiff Connie Kelley.  Presently before the Court is defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment.  For the reasons that follow, the Court grants defendant's Motion to Dismiss and dismisses the action with prejudice.[1]  The alternative Motion for Summary Judgment is denied as moot.

**II.    BACKGROUND[2]**

**A.  The Incident and Injury**

On November 28, 2010, plaintiffs visited Valley Forge National Historical Park in King of Prussia, Pennsylvania.  (Am. Compl. ¶ 14; Pl.'s Opp. Mot. 2.)  While at the Park, Ms. Kelley

---

[1] Plaintiffs' Amended Complaint contains two only counts: I and V.  Counts II, III, and IV were claims against defendants to whose dismissal the parties stipulated without prejudice on November 29, 2011.

[2] As required on a motion to dismiss, the Court takes all plausible factual allegations contained in plaintiffs' Amended Complaint to be true.

1

slipped and a fell on a "man-made walkway[] constructed of vinyl" ("the deck surface/walkway"³). (Am. Compl. ¶¶ 11-12.) Plaintiffs describe the purpose of the deck surface/walkway as "aid[ing] ingress and egress to redoubts and other historical structures." (Id. ¶ 11.) According to the National Park Service's Incident Report, attached to the Amended Complaint,⁴ the deck surface/walkway leads to an "overlook platform to the Fort Washington's redoubt."⁵ (Id. Ex. A, at 2). Plaintiffs allege that Ms. Kelley fell because of a "slick, slippery" condition, (id. ¶ 14), and the Incident Report adds that "[t]here were many leaves on the pathway along with moisture," (id. Ex. A, at 4). Plaintiffs aver that "the vinyl walkways [in the Park] require regular maintenance in order to be used and enjoyed safely." (Id. ¶ 13.)

Ms. Kelley's right patella was fractured in the fall, and she alleges that her right leg is permanently scarred and disfigured. (Id. ¶ 17.) She also claims to have suffered nerve damage and "contusions, abrasions, and lacerations over various portions of her body." (Id.) As a result of Ms. Kelley's injuries, Mr. Kelley avers a continuing loss of consortium. (Id. ¶ 27.)

### B. Plaintiffs' Allegations Regarding the Development and Commercial Nature of the Park

According to plaintiffs, the Park "charges fees for various activities and attractions in the park-area, . . . including . . . a ninety (90) minute guided trolley tour of the entire park; a compact disc driving tour which can be purchased for use in a visitor's car; a 'step on guide

---

³ Because the plaintiffs refer to the structure as a "deck surface/walkway" in the Amended Complaint, the Court uses that terminology. An Incident Report attached to the Amended Complaint states that Ms. Kelley told the reporting officer that she slipped and fell as "she was walking along the path towards the overlook platform." (Id. Ex. A, at 4.)

⁴ A court may consider documents attached to the complaint on a motion to dismiss. Huertas v. Galaxy Asset Mgmt., 641 F.3d 28, 32 (3d Cir. 2011).

⁵ A redoubt is a "small, often temporary defensive fortification," a "reinforcing breastwork or earthwork within a permanent rampart," or a "protected place of defense or refuge." Webster's II New Riverside University Dictionary 986 (1984).

services'; fee based formal education programs; and, fees for various activities in the park itself." (Id. ¶ 10.)  Plaintiffs state that the park has "undergone 'significant renovations' and rehabilitation within the last three (3) years, including renovation of the train station, lifeguard huts, waysides added to the landscape, and man-made walkways constructed of vinyl."  (Id. ¶ 11.)

### III.   LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that, in response to a pleading, a defense of "failure to state a claim upon which relief can be granted" may be raised by motion to dismiss.  To survive a motion to dismiss under Rule 12(b)(6), a civil plaintiff must allege facts that "raise a right to relief above the speculative level."  Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Twombly, 550 U.S. at 570).  To satisfy the plausibility standard, a plaintiff's allegations must show that defendant's liability is more than "a sheer possibility."  Id.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  Id. (quoting Twombly, 550 U.S. at 557).

In Twombly, the Supreme Court used a "two-pronged approach," which it later formalized in Iqbal.  Iqbal, 129 S. Ct. at 1950; Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009).  Under this approach, a district court first identifies those factual allegations that constitute nothing more than "legal conclusions" or "naked assertions."  Twombly, 550 U.S. at 555, 557.  Such allegations are "not entitled to the assumption of truth" and must be disregarded.  Iqbal, 129 S. Ct. at 1950.  The court must then assess "the 'nub' of the plaintiff['s]

3

complaint—the well-pleaded, nonconclusory factual allegation[s] . . . to determine" whether it states a plausible claim for relief.  Id.

## IV. DISCUSSION

Plaintiffs claim that defendant negligently inspected and maintained the deck surface/walkway and failed to warn of the dangerous conditions that allegedly caused Ms. Kelley's accident.  (Am Compl. ¶ 23.)  In its motion to dismiss, defendant asserts that Pennsylvania's Recreational Use of Land and Water Act ("RUA") bars liability unless the Park maliciously or willfully failed to guard or warn against a dangerous condition.  (Mot. Dismiss 3.) Plaintiffs have not alleged that the Park's conduct was malicious or willful.  Instead, they argue that RUA does not bar liability in this case because even on land covered by RUA, a landowner has a duty to maintain improvements that the landowner builds.  (Pl.'s Opp. Mot. 14.)  Because RUA applies to both the Park and the deck surface/walkway where Ms. Kelley slipped, the Court grants defendant's motion to dismiss.

### A. The Negligence Claim Is Barred by RUA

#### 1. The RUA Framework

Under the Federal Tort Claims Act, the United States is liable for "tort claims . . . in the same manner and to the same extent as a private individual under like circumstances."  28 U.S.C. § 2674.  Liability is governed by "the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1); see also Lingua v. United States, 801 F. Supp. 2d 320, 330 (M.D. Pa. 2011).  The relevant state law in the instant case is RUA, which limits the liability of landowners who "make land and water areas available to the public for recreational purposes."  68 Pa. Stat. Ann. § 477-1.  The Pennsylvania Supreme Court has explained that RUA's purpose is to limit

liability in connection with "outdoor recreation on largely unimproved land." Rivera v. Phila. Theological Seminary, 507 A.2d 1, 8 (Pa. 1986) (emphasis added).

Landowners whose land is covered by RUA "owe[] no duty of care to keep the premises safe for entry or use by others for recreational purposes, or to give any warning of a dangerous condition, use, structure, or activity on such premises to persons entering for such purposes." 68 Pa. Stat. Ann. § 477-3. Such landowners are liable only for "willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity" or "where the[y] charge[] the person or persons who enter or go on the land for the recreational use thereof." Id. § 477-6. RUA applies to both private and public landowners, Walsh v. City of Phila., 585 A.2d 445, 450 (Pa. 1991), and "viewing or enjoying historical, archaeological, scenic, or scientific sites" is one of the recreational purposes enumerated in the statute, 68 Pa. Stat. Ann. § 477-2.

In analyzing whether RUA bars plaintiffs' claims in this case, the Court must determine (1) whether RUA applies to the Park as a whole and (2) whether RUA applies to the deck surface/walkway. The Court concludes that RUA applies to both the Park and the deck surface/walkway.

### 2. RUA Applies to the Park as a Whole

In Blake v. United States, a court in this District held that RUA applies to the Park as a whole. No. 97-0807, 1998 WL 111802, at *6-7 (E.D. Pa. 1998). The court relied on the land's lack of enclosure, relative lack of improvements, expansiveness, and natural state. Id. Lower Pennsylvania courts have considered similar factors in determining whether a parcel of land is the type of large, undeveloped area to which RUA applies. See, e.g., Yanno v. Consol. Rail Corp., 744 A.2d 279, 282-83 (Pa. Super. Ct. 1999) (listing as factors the land's primary use, size, location, openness, and extent of improvement).

This Court agrees with the Blake court that the Park "is precisely the kind of land to which RUA tort immunity should be applied." Blake, 1998 WL 111802, at *6. The Blake court explained that the Park is "suitable, in [its] natural condition, for hiking, nature study, and viewing historical and scenic sites, all of which are listed as examples of permissible recreational purposes in section 477–2(3) of the RUA." Id. at *7. The court noted that the park is a large tract of land held open to the public free of charge with the exception, at that time, of a fee for a tour of the Washington's Headquarters building. Id. at *1.

Plaintiffs' attempts to distinguish Blake are unpersuasive. Although plaintiffs allege that the Park now charges fees for additional activities, that does not invalidate the Blake court's reasoning. The Park's primary use remains recreational, and, in any event, commercial use is only one of the factors relevant to RUA's applicability. Plaintiffs do not allege that the Park charges for general admission or for any activities they performed on their November 28, 2010, visit, such that the § 477-6 exception to RUA coverage—which applies to landowners who "charge[] the person or persons who enter or go on the land for the recreational use thereof"— might apply. See Blake, 1998 WL 111802, at *8 n.2 (explaining that "the word 'charge,' as used in the RUA, indicates 'an actual admission price paid for permission to enter the land at the time of its use for recreational purposes'" (quoting Livingston v. Pa. Power & Light Co., 609 F. Supp. 643, 648 (E.D. Pa. 1985))). Finally, renovations and the construction of "lifeguard huts, waysides[,] . . . and man-made walkways" do not make the park more developed than natural. They do not undermine the Blake court's assessment that "all 'improvements' . . . are clearly designed to promote [recreational] purposes, and do not render the Park 'developed' for the purposes of the RUA." Id.

### 3. RUA Applies to the Deck Surface/Walkway Where Plaintiff Connie Kelley Slipped

Once a court determines that RUA covers an overall parcel of land, the court must then assess whether a specific area or structure on the parcel is also covered. See, e.g., Bashioum v. City of Westmoreland, 747 A.2d 441, 442, 447 (Pa. Commw. Ct. 2000) (holding that a 96-foot "Giant Slide" was not covered by RUA despite being in a largely unimproved 400-acre park).

RUA's coverage is defined broadly to include "land, roads, water, watercourses, private ways and buildings, structures and machinery or equipment when attached to the realty." 68 Pa. Stat. Ann. § 477-2 (emphasis added). In Rivera, the Pennsylvania Supreme Court clarified that "buildings" and "structures" are covered by RUA only when they are "ancillary . . . to open space lands made available for recreation." 507 A.2d at 15. The Rivera court thus held that RUA did not apply to an indoor swimming pool, even though swimming is a RUA-enumerated recreational activity. Id.

The Pennsylvania Supreme Court has also ruled that "where land devoted to recreational purposes has been improved in such a manner as to require regular maintenance in order for it to be used and enjoyed safely, the owner has a duty to maintain the improvements" and RUA does not provide immunity from suit. Stone v. York Haven Power Co., 749 A.2d 452, 455 (Pa. 2000). However, Stone's "duty to maintain improvements" rule does not deny RUA coverage to all man-made structures, see, e.g., Stanton v. Lackawanna Energy, Ltd., 951 A.2d 1181, 1187-88 (Pa. Super. Ct. 2008) (holding that RUA applied to a steel gate on an easement through a 123-acre undeveloped property), and courts have applied it primarily in cases "involv[ing] highly developed locations," Lingua, 801 F. Supp. 2d at 332.[6]

---

[6] As the Lingua court points out, all of the cases that Stone cited in support of the rule denied RUA coverage to entire parcels of highly developed land. See 749 A.2d at 455-56 (citing Mills v. Commonwealth, 633 A.2d 1115, 1117-19 (Pa. 1993) (holding that applying RUA to Penn's

7

For that reason, the Lingua court held that RUA applied to a "man-made path" allowing "ingress and egress to a picnic area" from a parking lot, and the court distinguished the cases that denied RUA protection to highly developed locations. Id.; see also Brezinski v. Cnty. of Allegheny, 694 A.2d 388, 389-90 (Pa. Commw. Ct. 1997) (holding that RUA applied to a "sculpted pathway" between a picnic shelter and a parking lot at a park). Likewise, in applying RUA to bar a plaintiff's slip-and-fall negligence claim, the Brezinski court prioritized the "ancillary structure" rule of Rivera over the "duty to maintain" rule of Stone. The court reasoned that a picnic shelter did not require "regular maintenance as [did the basketball court] in Walsh. . . . [but r]egardless, such a picnic shelter is a building within the definition of land in Section 2 [of RUA], and certainly not more than an ancillary structure." Id. at 390 (emphasis added). Similarly, the Bashioum court, which found that RUA did not apply to a "giant slide" for which there was a duty to maintain, first decided that the slide was not an ancillary structure. 747 A.2d at 444-45.

In this case, RUA immunity extends to the deck surface/walkway because it is an "ancillary structure" that supports the recreational activities available at the Park. See Rivera, 507 A.2d at 15. As plaintiff characterizes it, the deck surface/walkway is designed to improve access to a historical site, the viewing of which is a RUA-enumerated recreational activity. It does not create any recreational activity independent of those already available on the land.

In so holding, the Court refuses to negate the "ancillary structure" rule by reasoning, as plaintiffs urge, that landowners have a duty to maintain all structures regardless of whether they are ancillary to RUA-covered recreational land. Holding that all man-made improvements are

---

Landing, a 37-acre "highly developed recreational area," would "thwart basic principles of tort liability"); Walsh, 585 A.2d at 450-51 (holding that extending RUA to a basketball court on a fully developed urban playground would "circumvent [a] basic principle of tort law"); Rivera, 507 A.2d at 8 (holding RUA inapplicable to an indoor swimming pool)).

outside RUA's scope would circumvent RUA's plain language, which covers at least some buildings and structures. Even if the court were to focus solely on Stone's "duty to maintain improvements" rule, the deck surface/walkway in the present case is more like the picnic areas and pathways in Brezinski and the gate in Stanton, which were held to be covered by RUA, than the hydropower dam in Stone, which was not.[7] It is not the kind of "highly developed" structure to which RUA is inapplicable. Thus, the Court grants defendant's motion to dismiss with respect to Ms. Kelley's negligence claim.

### B. The Loss-of-Consortium Claim

A loss-of-consortium claim is derivative of the primary tort claim. Thus, where the primary tort claim is dismissed, the loss-of-consortium claim must be dismissed as well. See Szydlowski v. City of Phila., 134 F. Supp. 2d 636, 639 (E.D. Pa. 2001) (holding this rule "well-established . . . under Pennsylvania law"). Because the Court has dismissed Ms. Kelley's negligence claim, Mr. Kelley's loss-of-consortium claim is also dismissed.

## V. CONCLUSION

For the foregoing reasons, the Court grants Defendant's Motion to Dismiss. The alternative Motion for Summary Judgment is denied as moot.

An appropriate Order follows.

---

[7] Plaintiffs cite Hatfield v. Penn Township, 12 A.3d 482 (Pa. Commw. Ct. 2010), which denied RUA coverage to a grass-and-dirt path allowing "ingress and egress" between softball fields. However, that case is distinguishable, as the Hatfield court held that the entire softball-field complex was a developed area not covered by RUA. Id. at 487-88.